UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF PRISONS,

    Defendants.

Civil Action No. _____

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

**INTRODUCTION**

1. On June 3, 2020, Jamel Floyd died while incarcerated at the Federal Bureau of Prisons' ("BOP") Metropolitan Detention Center ("MDC") in Brooklyn, New York. Mr. Floyd was 35 years old at the time and was eligible for parole in only three months. According to initial witness reports, Mr. Floyd was requesting medical care for several days before his death, but he received no response. On the day of his death, witnesses report that Mr. Floyd became upset that his requests for help were being ignored, and he caused a disturbance in his cell. Witnesses further report that a large group of BOP correction officers responded to Mr. Floyd's cell, pepper sprayed him while he was locked in his cell, subjected him to force, placed him in restraints, and removed him from his cell, at which point he was unresponsive. Mr. Floyd was then taken to a local hospital, where he was pronounced dead.

2. Mr. Floyd's family is looking for answers about his untimely death at the age of 35 years old, just months before he was eligible for release from prison. To that end, they retained counsel, Plaintiff Emery Celli Brinckerhoff Abady Ward & Maazel, to investigate Mr.

Floyd's death.  Plaintiff sent the BOP a Freedom of Information Act ("FOIA") request on July 16, 2020, seeking: (1) "any and all documents, records and files concerning Mr. Floyd's detention at the [MDC] in Brooklyn, NY," as well as, (2) "any and all health records."  On July 30, 2020, the BOP denied Plaintiff's July 16, 2020 request ("the July 16 Request") on the basis that the records sought purportedly concern records or information compiled for law enforcement purposes.  On administrative appeal, the United States Department of Justice ("DOJ") affirmed this denial on September 15, 2020.

       3.       Documents, records, and files concerning Mr. Floyd's detention at the MDC include, among other things, his inmate file, any disciplinary records, and routine BOP administrative records regarding Mr. Floyd's whereabouts throughout the duration of his incarceration at the MDC.  Mr. Floyd's correctional records maintained by the BOP contain important information about his confinement at the MDC where he died, including records documenting why he was in solitary confinement on the day of his death.  All of these records would be responsive to Plaintiff's FOIA request.

       4.       Mr. Floyd's health records maintained by the BOP contain critical information about his medical condition and medical treatment at the MDC, including in the weeks leading up to his death and on the day of his death.  According to the autopsy report issued on October 30, 2020 by the Office of the Chief Medical Examiner of the City of New York, Mr. Floyd suffered from hypertensive cardiovascular disease which caused him to suffer a cardiac arrhythmia on the day of his death: his medical records will demonstrate whether hypertension was a condition for which he was being treated before he died.  Mr. Floyd also reportedly was receiving mental health medications before his death, the reason for which would

also be documented in his medical records.  All of these types of health records would be responsive to the July 16 Request.

5. Mr. Floyd's family has patiently waited *over five months* for any details from Defendants concerning the circumstances of Mr. Floyd's death at a BOP facility.  In response, Defendants have stonewalled Mr. Floyd's grieving family, as well as their counsel, Plaintiff, at every turn, including by denying their access to his medical records.

6. The public, including Mr. Floyd's family and Plaintiff, have a right to know the circumstances under which Mr. Floyd died while in federal custody.  Because Defendants have chosen the path of secrecy over disclosure and accountability, Plaintiff now seeks relief to compel Defendants to immediately release the requested health and correctional records concerning the detention and death of Jamel Floyd at the MDC.

## JURISDICTION AND VENUE

7. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) because Plaintiff's principal place of business is in this district.

## PARTIES

8. Plaintiff Emery Celli Brinckerhoff Abady Ward & Maazel LLP is a law firm with its principal place of business in New York County, New York.  Jamel Floyd's mother, Donna Mays, who is also the administrator of Mr. Floyd's estate, retained Plaintiff on June 5, 2020 to investigate her son's death on behalf of her and Mr. Floyd's family.

9. Defendant DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). The DOJ has possession and control over some or all of the requested records.

10. Defendant BOP is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). The BOP has possession and control over some or all of the requested records.

## STATEMENT OF FACTS

*Jamel Floyd Dies in BOP Custody*

11. Jamel Floyd arrived at the MDC in Brooklyn, New York in October 2019.

12. On May 29, 2020, Jamel Floyd was incarcerated at the MDC. He was housed at MDC Unit 62 at the time.

13. On May 29, 2020, correction officers removed Mr. Floyd from Unit 62 and took him to Unit 84.

14. At that time, Unit 84 was being used as a Special Housing Unit ("SHU").

15. At some point on May 30, 2020, Mr. Floyd was removed from his cell in the Unit 84 SHU and taken to Kingsbrook Jewish Medical Center for medical treatment.

16. Mr. Floyd arrived at Kingsbrook Jewish Medical Center at 4:42 p.m. on May 30, 2020.

17. While at the hospital's emergency department, Mr. Floyd received treatment for a conjunctival hemorrhage (right eye) and an abrasion to his head.

18. Mr. Floyd left the Kingsbrook Jewish Medical Center emergency department at 6:59 p.m. on May 30, 2020.

19. Mr. Floyd was then taken back to the MDC, where he was placed in a cell by himself on the upper tier of unit 84.

20. From May 30 to June 2, Mr. Floyd was held alone in a cell on the upper tier of unit 84.

21.     On the morning on June 3, 2020, a number of correction officers responded to Mr. Floyd's cell in response to a disturbance.

22.     Several correction officers entered Mr. Floyd's cell.

23.     At approximately 10:00 a.m., correction officers removed Mr. Floyd from his cell, strapped him to a restraint chair, and carried him out of the unit.

24.     Mr. Floyd was taken to NYU Langone Hospital-Brooklyn, where he was pronounced dead at 11:07 a.m. on June 3, 2020.

25.     The Office of the Chief Medical Examiner of the City of New York issued a Report of Autopsy on October 30, 2020 regarding Mr. Floyd's death.

***Witness Reports of the June 3, 2020 Incident Leading to Mr. Floyd's Death***

26.     According to witnesses present at the MDC, the following events occurred at the MDC leading up to Mr. Floyd's death, and are alleged herein at paragraphs 27 through 45 upon information and belief.

27.     At approximately 9:00 p.m. on May 29, 2020, BOP correction officers took Mr. Floyd to a staff bathroom in Unit 62, where Mr. Floyd was housed.

28.     In the staff bathroom, at least two correction officers subjected Mr. Floyd to force while searching him.

29.     When Mr. Floyd emerged from the staff bathroom, he had a visible gash near his eyebrow that was bleeding profusely. Mr. Floyd's tooth was also broken during the search. Mr. Floyd's face and clothing, and the floor of the unit, were spattered in blood.

30.     The correction officers proceeded to remove Mr. Floyd from Unit 62 and transported him to the MDC infirmary, where his facial wound was temporarily bandaged. Correction officers then took Mr. Floyd to Unit 84.

5

31. Over the course of his four days of solitary confinement in Unit 84, Mr. Floyd experienced medical problems.

32. Mr. Floyd repeatedly requested assistance during this period but was ignored by BOP staff.

33. On June 3, 2020, Mr. Floyd began loudly requesting help from within his cell in Unit 84.

34. By late morning that day, Mr. Floyd began urgently and repeatedly shouting for help and banging on the door from inside his locked cell.

35. Correction officers continued to ignore Mr. Floyd's calls for help and instead told him to be quiet.

36. Mr. Floyd eventually damaged the sink in his cell, removed a piece of hardware from the sink, and used the piece of hardware to break the small window in his cell door.

37. In response, correction officers called for backup at approximately 9:52 a.m.

38. Dozens of BOP correction officers, including officers from special BOP riot control units, flooded Unit 84.

39. A large group of correction officers in riot gear assembled outside Mr. Floyd's cell.  Mr. Floyd was still locked inside his cell when they arrived.

40. Correction officers sprayed a large volume of oleoresin capsicum spray ("OC spray") into Mr. Floyd's locked cell.  Mr. Floyd's cell was saturated with the chemical irritant.

41. Mr. Floyd began loudly coughing, gagging, and choking.

42. Mr. Floyd remained locked in his OC spray-filled cell for several minutes.  He was audibly struggling to breathe.

43. Mr. Floyd fell to the floor.

44. Correction officers then opened the door to Mr. Floyd's cell, where they found him lying on the cell floor, shaking and convulsing.

45. Correction officers strapped Mr. Floyd's lifeless body to a restraint chair and carried him out of Unit 84.

***The BOP's Version***

46. According to the BOP's account of this incident, as detailed in the agency's June 3, 2020 press release, MDC staff "responded to an incident . . . in which [Mr. Floyd] was being disruptive."

47. The BOP claims its staff "observed [Mr. Floyd] barricaded inside his cell and breaking the cell door window with a metal object.  He became increasingly disruptive and potentially harmful to himself and others.  Pepper spray was deployed and staff removed [Mr. Floyd] from his cell."

48. The BOP's press release further states that MDC medical staff responded to assess Mr. Floyd, found him to be unresponsive, "initiated life-saving measures," and called emergency medical services, who transported Mr. Floyd to a local hospital, where he was pronounced dead by hospital staff.

49. According to the BOP, "[t]here is no indication that [Mr. Floyd's] death was related to COVID-19."

***Plaintiff Requests Records Concerning Mr. Floyd's Heath and Death at the MDC***

50. On July 16, 2020, Plaintiff submitted a FOIA request via email and U.S. Mail to the BOP seeking disclosure of "any and all documents, records and files concerning Mr. Floyd's

7

detention at the Metropolitan Detention Center in Brooklyn, NY, including any and all health records."[1]

51. The BOP requires third parties who request a deceased person's medical records to submit a signed release authorization from the legal representative of the deceased.

52. Accordingly, along with the July 16 Request, Plaintiff enclosed a signed authorization from Mr. Floyd's mother, Donna Mays, authorizing disclosure of these records in her capacity as next of kin.[2]

***Defendants Summarily Withhold All Records Under the Law Enforcement Exemption***

53. By letter dated July 30, 2020, the BOP denied Plaintiff's July 16 Request and advised that the records sought "are being withheld under 5 U.S.C. § 552(B)(7)(A) which concerns records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings."[3]

54. In its July 30, 2020 letter, the BOP assigned FOIA Request Number 2020-04695 to the July 16 Request.

55. Prior to receiving the BOP's July 30, 2020 letter, Plaintiff emailed the BOP on August 3, 2020 and asked for an update regarding the status of the July 16 Request.

56. By letter dated August 17, 2020, the BOP responded to Plaintiff's August 3, 2020 email and again advised that the agency was withholding records responsive to the July 16 Request under the 5 U.S.C. § 552(b)(7)(A).[4]

---

[1] A copy of Plaintiff's July 16, 2020 FOIA request is attached as Exhibit A.

[2] The Surrogate's Court, Nassau County, has since granted Donna Mays letters of administration of Mr. Floyd's estate, by order dated November 10, 2020. A copy of the Surrogate Court's order is attached as Exhibit B.

[3] A copy of the BOP's July 30, 2020 FOIA request denial letter is attached at Exhibit C.

[4] A copy of the BOP's August 17, 2020 FOIA request denial letter is attached as Exhibit D.

57. In its August 17, 2020 letter, the BOP assigned a different FOIA Request Number to the July 16 Request: 2020-06272.

58. On August 14, 2020, Plaintiff timely filed an administrative appeal of BOP's July 30, 2020 denial of the July 16 Request. Plaintiff's appeal was addressed to the DOJ's Office of Information Policy.

59. By letter dated September 15, 2020, the DOJ affirmed the BOP's "full denial of [Plaintiff's] [July 16] request."[5] The DOJ wrote that the BOP had "properly withheld this information in full because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision."

60. To date, the BOP has not disclosed any responsive records.

### The Public Interest in the Release of Mr. Floyd's Inmate Records is Significant

61. The news of Mr. Floyd's death at MDC has received extensive local, national, and international press coverage.[6]

62. The public interest in Mr. Floyd's death is particularly significant in the context of widespread public reporting this year regarding inadequate inmate medical care at MDC.[7]

---

[5] A copy of the DOJ's September 15, 2020 FOIA appeal denial letter is attached as Exhibit E.

[6] *See, e.g.*, Sanya Mansoor, *'Momma's Not Stopping Until That Jail Goes Down.' The Family of Jamel Floyd, New York Man Who Died After Bring Pepper Sprayed By Jail Guards, Speak Out*, Time (Oct. 13, 2020, 3:31 p.m.), https://time.com/5880800/jamel-floyd-jail-death-family-pepper-spray/; Noah Goldberg, *Second inmate in less than a month reported dead at troubled Brooklyn federal jail*, N.Y. Daily News (June 10, 2020, 10:14 p.m.), https://www.nydailynews.com/new-york/ny-inmate-mdc-dead-cause-unknown-kenneth-houck-20200611-3t2477sk3rhu3ho2dawq6p2txq-story.html; Andrew Naughtie, *Jamel Floyd: Black inmate dies after being pepper sprayed by police in New York*, The Independent (June 4, 2020, 1:52 p.m.), https://www.independent.co.uk/news/world/americas/jamel-floyd-death-george-protests-black-pepper-spray-police-a9548751.html.

[7] *See, e.g.*, Nick Pinto, *Revealed Sick-Call Requests From a Federal Jail Show People Desperate for Medical Attention Amid the Pandemic – and Waiting Weeks to Get It*, The Intercept (June 21, 2020, 7:00 a.m.), https://theintercept.com/2020/06/21/mdc-brooklyn-coronavirus-medical-requests/; Jessica Parks, *Detainees Report Inhuman Conditions at Brooklyn's Metropolitan Detention Center*, The Brooklyn Paper (June 17, 2020), https://www.brooklynpaper.com/detainees-report-inhumane-conditions-at-brooklyns-metropolitan-detention-center/.

### FIRST CAUSE OF ACTION
Violation of the Freedom of Information Act for
Failure to Make Records Available

63. Plaintiff repeats, realleges, and incorporates the foregoing paragraphs as if set forth herein.

64. Defendants' failure to make available the records sought by Plaintiff's requests violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

65. Defendants' withholding of specific responsive records, or portions thereof, violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

66. Plaintiff has exhausted all applicable administrative remedies.

67. Plaintiff is entitled to injunctive relief with respect to the prompt disclosure of the requested records.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Expedite its consideration of this action pursuant to 28 U.S.C. § 1657(a);

B. Order Defendants immediately to conduct a thorough search for records responsive to Plaintiff's requests;

C. Order Defendants immediately to process any responsive records for disclosure and produce such records to Plaintiff;

D. Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

E. Grant such other relief as the Court may deem just and proper.

Dated: November 24, 2020
      New York, New York

                                       Respectfully submitted,

                                             /s/
                                    Katherine Rosenfeld
                                    Nick Bourland

                                    EMERY CELLI BRINCKERHOFF ABADY
                                    WARD & MAAZEL LLP
                                    600 Fifth Avenue, 10th Floor
                                    New York, New York 10020
                                    Tel.: (212) 763-5000
                                    krosenfeld@ecbawm.com
                                    nbourland@ecbawm.com

                                    *Attorneys for Plaintiff*